1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8    Carmen Corrales-Gonzalez,                )    No.  CV-20-02023-PHX-SPL
                                               )
9                                              )
                         Plaintiff,            )    **ORDER**
10   vs.                                       )
                                               )
11                                             )
     Speed Auto Wholesalers LLC, et al.,       )
12                                             )
                                               )
13                      Defendants.            )
                                               )
14   _____       )

15          Before the Court is Plaintiff Carmen Corrales-Gonzalez's ("Plaintiff") Motion for

16   Default Judgment (Doc. 83) in which Plaintiff moves for this Court to enter default

17   judgment against Defendant Raul Quintero and in favor of Plaintiff for a total amount of

18   $75,578.03—which includes statutory damages of $71,889.00, attorneys' fees of

19   $3,467.50, and court costs of $221.53. (Doc. 83 at 1). No response to the Motion has been

20   filed. Having reviewed Plaintiff's Motion, the exhibits attached thereto, and the record in

21   this matter, the Court will grant the Motion.

22   **I.      BACKGROUND**

23          At issue in this case is a 2014 Jeep Grand Cherokee SRT-8 (the "Jeep") which was

24   originally put into service on or about January 12, 2014. (Doc. 1 at 3). On May 11, 2018,

25   the Jeep was purchased by Defendant Quintero. (*Id.* at 4). At that time, the Jeep had

26   approximately 100,000 miles on it. (*Id.*). Plaintiff alleges that Defendant Quintero rolled

27   back or otherwise altered the odometer reading to approximately 40,000 miles. (*Id.*). On

28   June 2, 2018, Defendant Quintero sold the Jeep to Defendant Maira Perez. (*Id.* at 4–5). On

1   November 24, 2018, Defendant Perez sold the Jeep to Defendant DP Corporation ("Lifted
2   Trucks"). (*Id.* at 5). On November 27, 2018, Defendant Lifted Trucks sold the Jeep to
3   Defendant Speed Auto Wholesalers LLC ("Speed Auto"), certifying on the back of the title
4   that the Jeep had an odometer reading of 59,867. (*Id.*). Finally, on December 22, 2018,
5   Plaintiff purchased the Jeep from Defendant Speed Auto. (*Id.* at 6). Plaintiff alleges that
6   Defendant Speed Auto represented to Plaintiff that the Jeep had 59,867 actual miles on it.
7   (*Id.* at 1). Approximately a year and a half later, when Plaintiff attempted to trade in the
8   Jeep for another vehicle at a dealership in Gilbert, Arizona, Plaintiff learned that the Jeep's
9   odometer reading was not accurate, and that it had been rolled back or otherwise altered to
10  reflect at least 60,000 fewer miles than it had actually traveled. (*Id.* at 1, 8). Specifically,
11  the dealership acquired a CarFax vehicle history report indicating that the Jeep's odometer
12  was altered sometime after January 27, 2018 and before Defendant Speed Auto acquired
13  the Jeep on November 27, 2018. (*Id.* at 8).

14          Plaintiff alleges that Defendants knew or should have known about the mileage
15  discrepancy, that he would not have purchased the Jeep had he known the true status of the
16  odometer and its mileage, and that he suffered actual damages as a result of Defendants'
17  actions, including the loss of value in the vehicle. (*Id.* at 10). On October 21, 2020, Plaintiff
18  filed a Complaint in this Court, alleging three counts: (i) violation of the federal Odometer
19  Act against all Defendants (Count I); (ii) violation of the Arizona Consumer Fraud Act
20  against Defendant Speed Auto (Count II); and (iii) breach of express warranty against
21  Defendant Speed Auto (Count III). (*Id.* at 10–13). On January 13, 2021, Defendant Perez
22  was dismissed. (Doc. 16). On June 6, 2022, this Court dismissed Counts II and III. (Doc.
23  69). Thus, the only remaining Defendants are Speed Auto, Lifted Trucks, and Quintero,
24  and the only remaining claim is Plaintiff's Odometer Act claim.

25          On January 11, 2021, the Clerk entered default against Defendant Quintero after he
26  failed to appear in this matter. (Doc. 15). On June 28, 2022, Plaintiff filed the present
27  Motion for Default Judgment as to Defendant Quintero. (Doc. 83). Defendant Quintero has
28  still not appeared in this matter.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    DISCUSSION

### A.  Subject Matter Jurisdiction, Personal Jurisdiction, and Service of Process

When default judgment is sought against a non-appearing party, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."). A court has a similar duty with respect to service of process. *See Fishman v. AIG Ins. Co.*, No. CV 07-0589-PHX-RCB, 2007 WL 4248867, at \*3 (D. Ariz. Nov. 30, 2007) ("Because defendant has not been properly served, the court lacks jurisdiction to consider plaintiff's motions for default judgment."). These considerations are "critical because '[w]ithout a proper basis for jurisdiction, or in the absence of proper service of process, the district court has *no power to render any judgment* against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process.'" *Id.* (citing *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007)).

First, as to subject-matter jurisdiction, the Court may exercise subject-matter jurisdiction because Plaintiff has stated a claim under the federal Odometer Act, 49 U.S.C. § 32701, *et seq.*, which confers jurisdictional powers upon district courts in the United States in conjunction with 28 U.S.C. § 1331. *See* 49 U.S.C. § 32710(b) ("A person may bring a civil action to enforce a claim under this section in an appropriate United States district court."). Next, as to personal jurisdiction, the Court has personal jurisdiction over Defendant Quintero because he is a citizen of Arizona and because he was properly served. *See Pennoyer v. Neff*, 95 U.S. 714 (1877) (noting that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory."); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (noting that a federal court lacks personal jurisdiction over defendant unless defendant properly served). According to the Complaint, Defendant Quintero is an individual residing in Phoenix, Arizona. (Doc. 1 at 3). Defendant Quintero was served at his Phoenix residence when the summons and complaint were

1   served on his grandmother, who also resided at the same residence, by a licensed process

2   server on October 23, 2020. (Doc. 9 at 1). The Court finds that service in this case was

3   proper under the relevant federal rule, which authorizes service of an individual by delivery

4   of the summons and complaint to the individual's residence and by leaving said documents

5   with someone of suitable age and discretion who resides there. *See* Fed. R. Civ. P. 4(e).

6   With preliminary considerations of jurisdiction and service of process out of the way, the

7   Court turns to whether default judgment is appropriate.

8   **B.  Default Judgment Analysis: *Eitel* Factors**

9   "A defendant's default does not automatically entitle a plaintiff to a default

10  judgment." *Hartford Life & Accident Ins. Co. v. Gomez*, No. CV-13-01144-PHX-BSB,

11  2013 WL 5327558, at *2 (D. Ariz. Sept. 24, 2013). Instead, once a default has been entered,

12  the district court has discretion to grant a default judgment. *See* Fed. R. Civ. P. 55(b)(2);

13  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors the Court may consider

14  include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the

15  sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a

16  dispute concerning material facts; (6) whether default was due to excusable neglect; and

17  (7) the policy favoring a decision on the merits (collectively, the "*Eitel* factors"). *See Eitel*

18  *v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the

19  factual allegations of the complaint, except those relating to the amount of damages, will

20  be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

21  **i)      The First, Fifth, Sixth, and Seventh *Eitel* Factors**

22  "In cases like this one, in which [Defendant has] not participated in the litigation at

23  all, the first, fifth, sixth, and seventh factors are easily addressed." *Zekelman Indus. Inc. v.*

24  *Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020).

25  The first factor—the possibility of prejudice to the plaintiff—weighs in favor of granting

26  default judgment. Defendant Quintero has failed to appear in this action, despite being

27  served on October 23, 2020. (Doc. 9). If Plaintiff's Motion is denied, then Plaintiff will

28  likely be without other recourse for recovery. *Zekelman*, 2020 WL 1495210, at *3 (citing

4

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

The fifth and sixth factors—the possibility of a dispute concerning material facts and whether default was due to excusable neglect—also weigh in favor of granting default judgment. Given the sufficiency of the Complaint (discussed below) and Defendant Quintero's default, the Court finds that no genuine dispute of material facts would preclude granting the Motion. And because Defendant Quintero was properly served and has never appeared in this case, the Court finds that it is unlikely that Defendant Quintero's failure to appear and the resulting default was the result of excusable neglect. *See id.* at *4 ("Due to Defendants' failure to participate, there is no dispute over material facts (except as to damages) and no indication that default is due to excusable neglect.").

The seventh factor—the policy favoring a decision on the merits—generally weighs in favor of denying default judgment because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of FRCP 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Moreover, Defendant Quintero's unexplained absence at this juncture of the case makes a decision on the merits impossible. Thus, the Court is not precluded from entering default judgment against Defendant Quintero. *See Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 1000–01 (9th Cir. 2007); *Zekelman*, 2020 WL 1495210, at *4 (citation omitted) ("[T]he default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court.").

### ii)    The Second and Third *Eitel* Factors

The second and third factors—the merits of the claims and the sufficiency of the complaint—weigh in favor of granting default judgment. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted). When the complaint sufficiently states a claim for relief, these factors favor a default judgment. *See*

*Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Zekelman*, 2020 WL 1495210, at \*5 (citation omitted).

Here, Plaintiff alleges that, at the time he purchased the Jeep, it was represented to him that the vehicle had only 59,867 actual miles on it. (Doc. 1 at 1). However, Plaintiff later discovered that the Jeep had well over 100,000 miles on it, and that its odometer had been rolled back or otherwise altered. (*Id.* at 1–2). Plaintiff alleges that Defendant Quintero rolled back the odometer during the time he possessed the Jeep in May 2018, and that Defendant Quintero knew or should have known that the odometer reading on the Jeep was no longer the actual mileage at the time he sold the Jeep to Defendant Perez. (*Id.* at 4). Plaintiff alleges that Defendant Quintero rolled back or otherwise altered the odometer with the intent to defraud Defendant Perez or subsequent purchasers of the Jeep, including Plaintiff. (*Id.* at 4–5). The Court finds that, taking these and other allegations made in the Complaint as true, Plaintiff has sufficiently stated a claim for relief against Defendant Quintero for violation of the Odometer Act, "which prohibits a person from changing the mileage on an odometer or providing a false odometer disclosure statement when transferring title to a vehicle." *King v. Union Leasing Inc.*, No. CV-17-03281-PHX-DGC, 2018 WL 5044660, at \*2 (D. Ariz. Oct. 17, 2018) (citing 49 U.S.C. §§ 32703(2), 32705(a)(1)). Also supporting Plaintiff's allegations are the various documents submitted to the Court by Plaintiff, including the CarFax Vehicle History Report (Doc. 1-1 at 1–11) and the Certificates of Title (Doc. 1-1 at 12–23). In sum, because Plaintiff has sufficiently stated a claim for relief against Defendant Quintero, the second and third *Eitel* factors favor default judgment in Plaintiff's favor.

### iii)    The Fourth *Eitel* Factor

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020

WL 1495210, at *4 (internal quotations omitted) (citation omitted).

Here, Plaintiff seeks $71,889. While $71,889 is no small sum, this Court does not find it to be so substantial or unreasonable as to discourage default judgment. Instead, this Court finds that $71,889 is an appropriate and reasonable damages calculation. Plaintiff came to this damages total by calculating the difference in value of the vehicle as represented to Plaintiff at the time of his purchase, and the true value of the vehicle at that time. Considering that it was represented to Plaintiff that the Jeep had only 59,867 miles on it, and that it *actually* had well over 100,000 miles on it, the Court finds that Plaintiff's calculated difference in value of $23,963 is reasonable. Under the Odometer Act, the $23,963 actual damages amount is trebled to $71,899. *See* 49 U.S.C. § 32710(a) ("A person that violates this chapter . . . with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater."). Given Plaintiff's allegation that Defendant Quintero willfully violated the Odometer Act when he sold or transferred title to the Jeep knowing that it had significantly more miles on it than disclosed, the Court finds that the requested amount is reasonable, and that the fourth factor weighs in favor of default judgment.

All told, this Court finds that the *Eitel* factors weigh in favor of default judgment as to Plaintiff's Odometer Act claim. The Court now turns to the relief sought by Plaintiff.

### C. Relief Sought

As noted above, Plaintiff seeks $71,899 in actual damages, and an award of $3,467.50 in attorneys' fees and $221.53 in costs. As a starting point, "'[a] judgment by default shall not be different in kind from . . . that prayed for in the demand for judgment' contained in the complaint." *U.S. v. Dutson*, No. 04-2585-PHX-EHC, 2006 WL 1390816, at *1 (D. Ariz. Mar. 7, 2006) (citing Fed. R. Civ. P. 54(c)). This requirement creates no issue here, however, as the relief sought is consistent with the relief requested in the Complaint. (*See* Doc. 1 at 11, 13–14). As to actual damages, this Court finds that $71,899 is appropriate. As noted above, any person found liable under the Odometer Act is responsible for three times the actual damages or $10,000, whichever is greater. 49 U.S.C. § 32710(a). Here, Plaintiff's actual damages were $23,963 which, when trebled, equals

$71,899. The Court finds Plaintiff's requested actual damages amount to be reasonable and supported by the record.

As to an award of fees and costs, the Odometer Act also provides that the Court "shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person." *Id.* § 32710(b). The Court finds that Plaintiff has sufficiently documented his request for attorneys' fees and costs by attaching to his Motion an affidavit from Plaintiff's counsel, an itemized statement of time expended and expenses incurred, and an invoice detailing the relevant costs. (Docs. 83-3 at 1–10 & 83-4 at 1–2). Plaintiff's Motion also explains that reasonable billing discretion was used to the extent that Plaintiff's Counsel only used the time entries pertaining to Defendant Quintero and he adjusted the time when the entries pertained to multiple defendants. (Doc. 83 at 11). Having carefully reviewed these supporting documents, the Court finds that the requested amounts are reasonable. Plaintiff will be awarded fees and costs pursuant to the federal Odometer Act, 49 U.S.C. § 32710(b) and Federal Rule of Civil Procedure 54(d).

## III.    CONCLUSION

Having reviewed Plaintiff's Motion and supporting documents, and having considered the *Eitel* factors in doing so, this Court concludes that the entry of default judgment is appropriate as to Plaintiff's Odometer Act claim against Defendant Quintero.

Accordingly,

**IT IS ORDERED:**

1. That Plaintiff's Motion for Default Judgment (Doc. 83) is **granted**. Default judgment, pursuant to FRCP 55(b)(2), is entered in favor of Plaintiff—and against Defendant Quintero—on Count One, Violation of the Odometer Act.

///

///

///

///

///

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.  That Plaintiff shall be awarded **$71,899.00 in actual damages** pursuant to 49 U.S.C. § 32710(a).

3.  That Plaintiff shall be awarded **$3,467.50 in reasonable attorneys' fees** and **$221.53 in costs** pursuant to 49 U.S.C. § 32710(b).

Dated this 7th day of September, 2022.

Honorable Steven P. Logan
United States District Judge

9