**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carmen Corrales-Gonzalez, | No.  CV-20-02023-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Speed Auto Wholesalers LLC, et al., | |
| Defendants. | |

Before the Court are Defendants' Renewed Motion for Judgment as a Matter of Law/Request for New Trial (Doc. 117) and Plaintiff's Motion for Award of Attorney's Fees (Doc. 114). Both Motions are fully briefed and ready for review. (Docs. 117 & 119; Docs. 113, 114, 116 & 118). The Court's ruling is as follows.[1]

## I.     BACKGROUND

On October 21, 2020, Plaintiff Carmen Corrales-Gonzalez ("Plaintiff") filed a Complaint against Defendants Speed Auto Wholesalers LLC ("Speed Auto") and DP Corporation (d/b/a "Lifted Trucks").[2] (Doc. 1 at 1–3). The Complaint sought damages for Defendants' violation of the federal Odometer Fraud Act (the "Odometer Act"), 49 U.S.C.

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Plaintiff also named two other Defendants—Maira Perez and Raul Quintero. Ms. Perez was dismissed. (Doc. 16). Mr. Quintero failed to appear, leading the Court to enter default judgment against him. (Doc. 93).

§ 32701, *et seq.*, after Plaintiff purchased a used vehicle from Defendant Speed Auto—which had itself obtained the vehicle from Defendant Lifted Trucks—and later learned that the vehicle's odometer was inaccurate. (*Id.* at 1–2). On September 21, 2022, following a jury trial, judgment was entered in favor of Plaintiff. (Doc. 112). The jury verdict found that Defendants violated the Odometer Act with intent to defraud and awarded Plaintiff damages in the amount of $32,136.00 against Defendant Speed Auto and $33,000.00 against Defendant Lifted Trucks. (Doc. 110 at 1–2).

On October 5, 2022, Plaintiff filed the present Motion for Award of Attorney's Fees (Doc. 114). Plaintiff's counsel, Floyd W. Bybee ("Mr. Bybee"), requests an award of $94,572.50 in attorney's fees, which represents 199.1 hours of attorney time at $475 per hour. (*Id.* at 1). On October 19, 2022, Defendants filed a Response brief opposing Plaintiff's request and arguing that a $25,000 award would be appropriate. (Doc. 116 at 8). On October 26, 2022, Plaintiff filed a Reply. (Doc. 118).

On October 19, 2022, Defendants filed a Renewed Motion for Judgment as a Matter of Law ("JMOL") or New Trial (Doc. 117). On November 2, 2022, Plaintiff filed a Response. (Doc. 119). Defendants did not file a Reply brief.

## II.   LEGAL STANDARDS

### A.   Rule 50 and 59 Motions

A party may *renew* a motion for JMOL no later than 28 days after the entry of judgment in a jury trial.[3] Fed. R. Civ. P. 50(b). "The test [on a Rule 50(b) motion] is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016) (quotations and citation omitted). Mere disagreement with the jury's outcome is insufficient, as JMOL is appropriate only if a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Where there is sufficient

---

[3] Here, Defendants' Motion is timely. Judgment was entered on September 21, 2022 (Doc. 112), and Defendants filed their Motion on October 19, 2022 (Doc. 117).

conflicting evidence, or if reasonable minds could differ over the verdict, JMOL is improper. *Harper v. City of L.A.*, 533 F.3d 1010, 1021–22 (9th Cir. 2008).

Rule 59 permits the Court to grant a motion for a new trial "only if the verdict is contrary to the clear weight of the evidence or 'it is quite clear that the jury has reached a seriously erroneous result.'" *Madsen v. City of Phx.*, No. CV-19-03182-PHX-GMS, 2023 WL 2042254 (D. Ariz. Feb. 16, 2023) (quoting *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987)). Pursuant to a Rule 59 motion, "the district court can weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014). "Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for a new trial, is not required to view the trial evidence in the light most favorable to the verdict." *Id.* "A court may also grant a new trial based on the failure to give adequate jury instructions, erroneous jury instructions, or attorney misconduct." *Madsen*, 2023 WL 2042254, at *1 (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) and *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1145 (9th Cir. 2001)).

**B. Motion for Attorney's Fees**

Rule 54(d) provides that any "claim for attorneys' fees and related nontaxable expenses must be made by motion." Fed. R. Civ. P. 54(d)(2). "Unless a statute or a court order provides otherwise, the motion must:

> (i) be filed no later than 14 days after the entry of judgment;
>
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

*Id.* Rule 54(d) also provides that courts may establish their own local rules to resolve fee-related issues. Fed. R. Civ. P. 54(d)(2)(D). In the District of Arizona, Local Rule of Civil

Procedure ("LRCiv") 54.2 applies to requests for fees and related non-taxable expenses.

### III.  DISCUSSION

Two Motions are at issue in this Order. The Court will first address Defendants' Motion (Doc. 117) requesting JMOL, pursuant to Rule 50, or alternatively a new trial, pursuant to Rule 59. The Court will then turn to Plaintiff's Motion for Award of Attorney's Fees (Doc. 114) in which Mr. Bybee requests an award of $94,572.50 in attorney's fees from Defendants for the fees incurred during this litigation.

### A. Defendants' Motion for JMOL/New Trial

Defendants request JMOL or alternatively a new trial because (i) the jury overlooked the "uncontested" testimony of Defendants' expert, Dave Warkentin, and (ii) the Court incorrectly instructed the jury which led this case to be treated as a strict liability case. (Doc. 117 at 2). Having reviewed Defendants' arguments—as well as the entire record in this matter—the Court finds that Defendants have failed to demonstrate that JMOL or a new trial is appropriate for either reason.

With respect to the first issue, Mr. Warkentin testified that industry standards did not require Defendant Speed Auto to change the status of the Jeep's title—that is, check either of the boxes on the Secure Odometer Disclosure indicating an odometer mechanical failure or discrepancy—based solely upon the Carfax Report because Carfax reports are not always accurate.[4] He further testified that Defendant Speed Auto's actions—having Plaintiff sign the Carfax Report and the Buyer's Order, each of which noted the odometer discrepancy—was consistent with what he teaches dealers to do. Defendants argue that this testimony was "uncontested" and that the jury erred by overlooking it. (*Id.*).

---

[4] Defendants' Motion asserts that Mr. Warkentin "testified that neither ADOT or the Department of Motor Vehicles [] allow a dealership to change the title, *i.e.*, mark Box B or Box C, based upon the CarFax." (Doc. 117 at 2). Having carefully reviewed the trial transcript, the Court finds this assertion to misstate Mr. Warkentin's testimony. Rather than testifying that *state regulations prohibit* a dealer from changing the title based upon a Carfax report, Mr. Warkentin testified that *industry customs and standards do not require* a dealer to change the title based upon a Carfax report.

4

The Court is unpersuaded by Defendants' argument. Even assuming Mr. Warkentin's testimony was *entirely uncontested* and that the jury *entirely ignored it*, such weighing of the evidence was squarely within the jury's discretion and did not amount to an error warranting JMOL in Defendants' favor or a new trial altogether.[5] *See Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620, 627–28 (1944) (internal quotations and citations omitted) ("The rule has been stated that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony. . . . [T]he jury, even if such testimony be uncontradicted, may exercise their independent judgment."); *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 183 (Fed. Cir. 1994) ("It is within the province of the jury to determine credibility of a witness and the weight to be given his testimony; the jury is not required to accept testimony as true, even if it is uncontradicted.").

To be sure, Mr. Warkentin was not permitted to testify as to the state of the law or to explain any relevant legal standards. Rather, he was limited to testifying within the scope of his expertise, particularly as it relates to the customs and practices of his industry. After all, it is the duty of the Court—and not the parties nor a witness—to instruct the jury on the law. *See Sparf v. United States*, 156 U.S. 51, 74 (1895) ("It is the duty of the court to instruct the jury as to the law and it is the duty of the jury to follow the law as it is laid down by the court."). Thus, to the extent Defendants believe that the jury should have been *required* to recognize that Defendants were prohibited from checking either of the boxes on the Secure Odometer Disclosure based only on information they received from the Carfax Report—pursuant to Arizona Department of Transportation ("DOT"), Department

---

[5] The Court instructed the jury on this very issue: "You have heard testimony from . . . Dave Warkentin who testified to opinions and the reasons for [his] opinions. . . . Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case." (Doc. 104 at 7, "Final Jury Instructions").

of Motor Vehicles ("DMV"), or other state regulations—Defendants should have sought a jury instruction. Instead, the parties' proposed final jury instructions did not contain *any* instructions related to how a dealer should handle a potential odometer discrepancy flagged by a Carfax report under state law—that is, whether the dealer has an obligation to report, the discretion to report, or is prohibited entirely from reporting the Carfax-flagged discrepancy on the title or on the Secure Odometer Disclosure. (*See* Doc. 99). In fact, the proposed final jury instructions do not contain any references whatsoever to DOT, DMV, or other Arizona regulations.[6] Moreover, the Court is itself unaware of any law—state or federal—that discourages or prohibits reliance on a Carfax report in disclosing odometer discrepancies to the buyer. Likewise, Defendants fail to cite to any such law—or any caselaw or other legal authority—to support their contention. Rather, at least one case from this District has recognized the relevance of a Carfax report in determining whether a dealer should have disclosed an odometer discrepancy. *See McEwen v. Delong*, No. CV-19-05192-PHX-SMB, 2021 WL 2635459, at *5 (D. Ariz. June 25, 2021) (finding sufficient evidence on which a jury could find that dealer violated Odometer Act with intent to defraud because Carfax report "should have at least prompted [the dealer] to investigate further"). In sum, Defendants relied solely on the testimony of Mr. Warkentin to demonstrate that state regulations prohibit dealerships from changing the title—that is, marking either box on the Secure Odometer Disclosure—based solely upon a Carfax report. It was fully within the jury's discretion to discredit or give less weight to his testimony, and the Court cannot overturn their verdict for their apparent decision to do so.

Defendants also argue that the Court erred in not instructing the jury that "disclosure of an odometer discrepancy [is] sufficient to satisfy the statutory requirements of disclosure." (Doc. 117 at 2). Defendants' contention is that the odometer discrepancy was disclosed to Plaintiff when Defendants had him sign the Carfax Report and the Buyer's

---

[6] The only references to Arizona law in the parties' proposed final instructions relate to certain contract-law instructions that Defendants sought to include. (Doc. 99 at 36–37).

Order, two documents which noted the odometer discrepancy. Defendants argue that these disclosures satisfied their duties under the Odometer Act and that it is irrelevant that the Secure Odometer Disclosure—another document provided to Plaintiff at the time of sale— did not mention the odometer discrepancy at all. Without this instruction, Defendants contend that the jury treated this as a strict liability case and held Defendants liable solely for failing to check either of the boxes on the Secure Odometer Disclosure. (*Id.*).

The Court is unpersuaded. Although Defendants assert that the instruction was supported by "[a]n abundance of cases, cited in Defendants' case law in support of its requested jury instructions," (*id.*), this Court's review of the parties' final proposed jury instructions reveals no such abundance. (*See generally* Doc. 99). On Jury Instructions #15 and #17, Defendants requested an additional instruction stating that Plaintiff must show— as a required element to his claim and to demonstrate intent to defraud—"that Defendants did not alert [him] to the odometer defects." (*Id.* at 31–32, 34). Although this is worded differently than the instruction Defendants argue for in their Motion, it generally captures the same idea. Defendants' theory is that Plaintiff was alerted to the odometer discrepancy when he signed the Carfax Report and the Buyer's Order, and that it is therefore irrelevant that the Secure Odometer Disclosure did not mention the discrepancy. Thus, Defendants argue that this Court should have instructed the jury that what matters is whether the buyer is alerted to the odometer discrepancy—regardless of how such disclosure occurs or whether the disclosure is contradicted by a subsequent document. The Court rejected Defendants' proposal for Jury Instructions #15 and #17, however, because Defendants failed to cite any legal authority to support it. The only case relied upon by Defendants— *Jones v. Fenton Ford, Inc.*, 427 F. Supp. 1328 (D. Conn. 1977)—does not stand for the proposition that so long as the buyer is "alerted" of an odometer discrepancy, the seller need not disclose the discrepancy on the Secure Odometer Disclosure. Rather, *Jones* addressed whether the "intent to defraud" element requires actual knowledge, or if liability may be imposed where the defendant acted with mere reckless or careless disregard of the truth. *See Jones*, 427 F. Supp. at 1335–36.

In sum, Defendants have not offered any legal authority—in their proposed instructions or in the present Motion—for its proposition that a dealer may satisfy its disclosure duties under the Odometer Act by alerting the buyer of the discrepancy on certain documents and subsequently omitting any reference to that discrepancy on the Secure Odometer Disclosure. Rather, as Plaintiff points out in his Response, "the Odometer Act and its accompanying regulations are very specific as to how odometer disclosures should be made." (Doc. 119 at 8). As this Court instructed the jury, (Doc. 104 at 17), the written disclosure must include, among other things, the odometer reading at the time of the transfer *and* the transferor's certification that: (1) "to the best of [the transferor's] knowledge the odometer reading reflects the actual mileage," (2) "the odometer reading reflects the amount of mileage in excess of the designated mechanical odometer limit," *or* (3) "the odometer reading does not reflect the actual mileage, and should not be relied upon." 49 C.F.R. § 580.5(c), (e). This disclosure must be made "on the physical or electronic title or, except as noted below, on the physical document being used to reassign the title." *Id.* § 580.5(c).

Here, it was reasonable for the jury to find that Defendants violated the Odometer Act because the evidence showed that Defendants knew of an odometer discrepancy based on the Carfax reports, and nonetheless provided to Plaintiff a written disclosure—the Secure Odometer Disclosure—certifying that the odometer reading reflected the actual mileage, as opposed to certifying that the odometer reading did *not* reflect the actual mileage and should not be relied upon. *See Shaghoian v. Aghajani*, 228 F. Supp. 2d 1107, 1111 (C.D. Cal. 2002) (quoting 49 U.S.C. § 32705(a)(1)) ("The Odometer Act requires the transferor to disclose in writing . . . that the actual mileage is unknown, if the transferor knows the odometer reading is different from the number of miles the vehicle has actually traveled."); *see also* § 32705(a)(2) (emphasis added) ("[The transferor] may not violate a regulation prescribed under this section *or give a false statement* to the transferee in making the disclosure required."). Likewise, it was reasonable for the jury to find that Defendants acted with an intent to defraud because the evidence showed that Defendants had reason to

know that the mileage on the Jeep was more than was reflected by the odometer, by virtue of the Carfax reports. *See Haynes v. Manning*, 917 F.2d 450, 453 (10th Cir. 1990) ("A transferor [] may be found to have intended to defraud if he had reason to know the mileage on the vehicle was more than was reflected by the odometer or certification of the previous owner and nevertheless failed to take reasonable steps to determine the actual mileage.").

Having fully reviewed and considered the arguments by both parties, the Court finds that Defendants have failed to raise any basis for the relief they request under either Rule 50(b) or Rule 59 as it relates to Plaintiff's Odometer Act claim. Construing the evidence in Plaintiff's favor, a reasonable jury could find as the jury found here—that Defendants violated the Odometer Act with intent to defraud. Moreover, Defendants failed to point to any jury instruction—supported by sufficient legal authority—that this Court failed to provide to the jury in the final instructions. Defendants' Motion is denied.

**B.  Plaintiff's Motion for Attorneys' Fees**

Under LRCiv 54.2, "[a] party requesting an award of attorneys' fees must show that it is (a) eligible for an award, (b) entitled to an award, and (c) requesting a reasonable amount." *Thompson v. Ariz. Movers & Storage Inc.*, No. CV-17-03819-PHX-DGC, 2018 WL 2416187, at *1 (D. Ariz. May 29, 2018) (citing LRCiv 54.2(c)).[7] First, as to eligibility, LRCiv 54.2(c)(1) requires a plaintiff to "specify the judgment and cite the applicable statutory or contractual authority upon which the movant seeks an award of attorneys' fees." Here, judgment was entered in favor of Plaintiff following a jury trial, (*see*

---

[7] LRCiv 54.2(d) also requires the moving party to attach certain supporting documentation to any request for attorneys' fees: "(1) a statement of consultation, (2) a complete copy of any written fee agreement, (3) a task-based itemized statement of time expended and expenses incurred, and (4) an affidavit of moving counsel." *Rindlisbacher v. Steinway & Sons Inc.*, No. CV-18-01131-PHX-MTL, 2021 WL 2434207, at *2 (D. Ariz. May 26, 2021) (citing LRCiv 54.2(d)).

Here, Plaintiff attaches the proper supporting documentation: (1) Statement of Consultation (Doc. 114-4 at 1–2); (2) a complete copy of the fully executed Fee Agreement between Plaintiff and counsel (Doc. 70-1 at 2–3); (3) a task-based itemized statement of time expended and expenses incurred (Doc. 114-1 at 7–21); and (4) a Declaration, which serves as the affidavit of moving counsel (Doc. 114-1 at 2–6).

Doc. 112), and the Odometer Act—under which Plaintiff brought this action—provides that "[t]he court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person." 49 U.S.C. § 32710(b). Therefore, Plaintiff is eligible for an award of reasonable attorney's fees under the Odometer Act. Defendants do not dispute this. (*See* Doc. 116 at 2 ("Eligibility is not an issue.")).

The Court now turns to the second required showing for an award of attorneys' fees: entitlement. The Local Rule requires Plaintiff to "discuss the applicable factors deemed relevant in determining whether attorneys' fees and related non-taxable expenses should be allowed, with citation(s) to the relevant legal authority." LRCiv 54.2(c)(2). As discussed above, Plaintiff is entitled to an award of reasonable attorney's fees because he is the prevailing party, and an award of fees to the prevailing party is *mandatory* under the Odometer Act. *See* § 32710(b) ("The court *shall* award costs and a reasonable attorney's fee to the person when a judgment is entered for that person."); *see also Phillips v. David Hay Enters. Inc.*, No. CV-19-05042-PHX-SMB, 2022 WL 2820801, at *1 (citing *Duval v. Midwest Auto City Inc.*, 578 F.2d 721 (8th Cir. 1978)) ("The award of attorney's fees to a successful plaintiff is mandatory under the Act.").

Although Plaintiff has demonstrated entitlement to an award of fees in satisfaction of LRCiv 54.2(c)(2), the language of this specific provision does raise one issue with Plaintiff's request for fees. LRCiv 54.2(c)(2) provides:

> If the moving party claims entitlement to fees for preparing the motion and memorandum for award of attorneys' fees and related non-taxable expenses, such party *also must cite the applicable legal authority supporting such specific request.*

LRCiv 54.2(c)(2) (emphasis added). Here, Mr. Bybee requests fees for 7.9 hours billed in preparing the instant Motion and its related memorandum and supporting documents.[8]

---

[8] The Court is referring to twelve specific time entries between September 17 and October 5, 2022. (*See* Doc. 114-1 at 20–21). These time entries include tasks such as drafting the motion and memorandum, drafting documents attached to the motion such as declarations and certifications, researching legal issues arising in the motion, contacting opposing counsel to conduct good faith consultation regarding motion, reviewing time

Plaintiff does *not*, however, cite to any applicable legal authority supporting this request. The Court finds that Plaintiff is therefore not entitled to payment for the 7.9 hours of attorney time spent in preparing the instant Motion. This results in a reduction of $3,752.50 from Mr. Bybee's total fee award. *See Moshir v. Automobili Lamborghini Am. LLC*, 927 F. Supp. 2d 789, 803–04 (D. Ariz. 2013) ("[Plaintiff] has failed to specifically cite any applicable legal authority supporting his claim of entitlement to fees for preparing the motion and memorandum for award of attorneys' fees, as required by LRCiv 54.2(c)(2). . . . Accordingly, [Plaintiff] has not shown that he is entitled to recovery for the 22.6 hours of attorney time spent in preparing his motion for fees and costs. The court will reduce the reasonable hours component of the lodestar calculation accordingly."); *Croomes v. Stream Glob. Servs.-AZ, Inc.*, No. CV11-0141-PHX-JAT, 2012 WL 1247021, at *4 (D. Ariz. Apr. 13, 2012) (denying defendant's request for fees incurred in preparing motion for fees and costs because defendant failed to cite any legal authority supporting request); *J & J Sports Prods., Inc. v. Margaillan*, No. CIV 13-312-TUC-CKJ, 2014 WL 169801, at *2 (D. Ariz. Jan. 15, 2014) ("No authority having been provided for an award for the preparation of the pending motion, the Court will reduce the requested award by $450.00 (2.75 hours), the amount requested for the preparation of the pending motion.").[9]

records, and editing the time matrix attached to the motion. The Court does *not* include the September 17, 2022 entry for "work on taxable costs; organize receipts for costs" or the October 4, 2022 entry for "Prepare Bill of Costs for Taxable Costs only" because these entries relate to Plaintiff's Bill of Costs (Doc. 113) and *not* to Plaintiff's motion and memorandum for award of attorney's fees and related non-taxable expenses.

[9] The Court recognizes that the Ninth Circuit generally permits an award of fees for time expended in preparing a motion for attorneys' fees. *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–60 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."); *Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 479 (D. Ariz. 2019) (citing *In re Nucorp*, 764 F.2d at 660) ("[I]t would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee.").

However, "district courts are free to adopt local rules regarding the filing of motions for attorneys' fees and expenses." *Moshir*, 927 F. Supp. 2d at 803, n.14 (citing *Lytle v.*

11

Finally, the Court turns to the third required showing for an award of fees—the reasonableness of Plaintiff's fee request. In assessing reasonableness, federal courts begin with the "lodestar figure," which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Next, the Court "determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "These factors are known as the *Kerr* factors." *Stetson v. Grissom*, 821 F.3d 1157, 1167 (9th Cir. 2016) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). "There is a strong assumption that the 'lodestar' method represents the reasonable fee," *Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2021 WL 3400608, at *6 (D. Ariz. July 20, 2021), and an adjustment based on the *Kerr* factors is generally appropriate "only in rare or exceptional cases." *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988)). The *Kerr* factors are:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the questions involved;
>
> (3) the skill requisite to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
>
> (5) the customary fee;
>
> (6) whether the fee is fixed or contingent;
>
> (7) time limitations imposed by the client or the circumstances;
>
> (8) the amount involved and the results obtained;
>
> (9) the experience, reputation, and ability of the attorneys;

---

*Carl*, 382 F.3d 978, 989 (9th Cir. 2004)). Here, the District has adopted a local rule expressly requiring a party to cite supporting legal authority whenever it requests fees for time spent preparing a motion for fees. LRCiv 54.2(c)(2). Thus, the Court has discretion to deny Plaintiff's request because Plaintiff failed to comply with the local rules. *See United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979) ("Only in rare cases will we question the exercise of discretion in connection with the application of local rules.").

(10) the 'undesirability' of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Kerr*, 526 F.2d at 70; *see also* LRCiv 54.2(c)(3) (providing same list of factors for determining reasonableness of requested award); *Isom v. JDA Software Inc.*, 225 F. Supp. 3d 880, 888 (D. Ariz. 2016) (listing some of *Kerr* factors and citing to LRCiv 54.2(c)(3)).

Here, Plaintiff's Motion addresses the relevant *Kerr* factors and requests a total award of $94,572.50 in reasonable attorney's fees for 199.1 hours of attorney work. (Doc. 114 at 1). The Court will review this request under the *Kerr* factors.

### i.    Time and Labor Required

Mr. Bybee represents that this case required 199.1 hours of attorney time. (*Id.* at 4). Plaintiff contends that "[a]n odometer fraud case is unique and unlike the typical personal injury case"—and therefore more labor intensive for the plaintiff's counsel—for two reasons. (*Id.* at 5). First, an odometer fraud case requires a plaintiff to prove the defendant's fraudulent intent. (*Id.*). Second, an odometer fraud case involves fraudulent behavior by the defendant and therefore the defendants in these cases "tend to hide and conceal evidence of their actions which must then be uncovered by plaintiff." (*Id.*). Plaintiff further contends that the difficulty of investigation and discovery in this case was compounded by the fact that Defendants Speed Auto and Lifted Trucks shared the same counsel. (*Id.*). As a result, "[t]he possibility of collusion was real and evident in much of the discovery provided by Defendants." (*Id.*). For example, Plaintiff asserts that their answers to interrogatory questions were identical and that settlement discussions in this case were "nearly non-existent" and therefore collusive. (*Id.* at 5–6). Although Plaintiff made separate demands to each Defendant, only global offers were returned and such offers were well below what Plaintiff was expecting or offering. (*Id.* at 6). Finally, Plaintiff asserts that the labor required in this case was increased because Defendants refused to accept a bench trial and insisted on trying this case before a jury. (*Id.*).

13

The Court is largely unpersuaded by Plaintiff's arguments on this factor. Although Plaintiff asserts an incentive for Defendants "to hide and conceal evidence of their actions," there is no support showing such unfair tactics were actually used. Likewise, Plaintiff fails to offer conclusive or even strongly persuasive support for his contention that Defendants engaged in collusion. Although it is true that Defendants shared counsel, the fact that their interrogatory answers were identical or that Defendants were stubborn and perhaps even unreasonable during settlement negotiations does not necessarily demonstrate collusion. Even if this Court were to assume that collusion may be suggested by Defendants' insistence on a global settlement and Defendant Limited Truck's failure to offer its own witnesses at trial, it is not clear how such collusion increased the time and labor burden on Mr. Bybee in litigating this case. Finally, the Court is unpersuaded that Defendants' apparent insistence on trying this case before a jury was founded in an intent to raise the time and labor required of Mr. Bybee. Defendants exercised their right to seek a jury trial and the Court will not speculate that their intent was to raise the costs of this litigation for Plaintiff. Defendants may have very well had legitimate reasons to prefer a jury trial in this case and Plaintiff fails to demonstrate that they had ulterior, improper motives. Moreover, Plaintiff's assertion that *he* sought a bench trial "to reduce potential costs and fees" is at least somewhat undermined by Mr. Bybee's admission that he has limited experience with jury trials in federal court because the admission shows an alternative reason why Plaintiff may have sought a bench trial.

Setting aside Plaintiff's suggestions of concealed evidence, collusion, and Defendants' pursuit of a jury trial with the intent of increasing the litigation burden on Mr. Bybee, the Court finds that Plaintiff does raise some valid points as it relates to the first factor. First, the Court recognizes that Plaintiff's burden of proving fraudulent intent made this case more time and labor intensive than the typical personal injury action. Second, the parties' inability to reach a settlement agreement—despite engaging in early settlement discussions *and* participating in a settlement conference with Magistrate Judge Michael T. Morrissey—also contributed to an increase in the time and labor required of Mr. Bybee in

this litigation. Finally, the fact that this case was tried before a jury rather than the bench is relevant because, as a factual matter, jury trials typically require more time and labor for both parties. This appears to be true in the present case, as the time log submitted by Mr. Bybee indicates that 98.6 hours—or nearly fifty percent—of the 199.1 hours spent on this case occurred between August 22, 2022 and September 19, 2022, when Mr. Bybee was either prepping for or conducting the jury trial. (Doc. 114-1 at 16–20). Together, these facts support Plaintiff's large fee request by demonstrating that this case required more time and labor on the part of Mr. Bybee, at least in comparison to similar types of cases.

In their Response, Defendants identify several time entries in Plaintiff's fee request that they assert were unnecessary and unreasonable. (Doc. 116 at 5–6). Defendants argue that Plaintiff overbills or double bills for time that Mr. Bybee spent preparing the Complaint, drafting certain documents related to the parties' settlement discussions, drafting and revising the jury instructions, and preparing the instant Motion. (*Id.*). The Court will analyze the reasonableness of each of these disputed time entries.[10]

First, Defendants argue that Plaintiff requests an unreasonable amount of time for preparing the Complaint. (*Id.* at 5). Defendants reason that the Complaint in this case was "virtually the same" as complaints used by Mr. Bybee in other Odometer Act cases and that it is therefore unreasonable for him to bill 2.7 hours for preparing the Complaint when such a task amounted to a mere "cut-and-paste" exercise. (*Id.*). The Court is unpersuaded. Although there were many parts of the Complaint which Mr. Bybee could borrow from previous complaints he had completed, Plaintiff is correct that every case is different, and that even cut-and-paste exercises require the tailoring of the pleading to the facts and circumstances of the particular case. Moreover, 2.7 hours is not, on its face, an unreasonable amount of time to spend preparing a complaint, even where many parts of

---

[10] The Court will not address Defendants' argument that Plaintiff's counsel spent an unreasonable amount of time preparing the instant Motion because the Court has already reduced the 7.9 hours Plaintiff bills for this task. *See supra* pt. III, sec. (B). As discussed above, Plaintiff failed to comply with the Local Rules by citing to legal authority supporting such a fee request. *See id.*

that complaint can be drawn from previous work. The Court will not reduce Plaintiff's fee request for the time he spent preparing the Complaint.

Second, Defendants take issue with the time Mr. Bybee spent drafting the settlement demand letter and the settlement conference memorandum. (*Id.* at 5–6). On August 11 and 12, 2021, Mr. Bybee recorded a total of 2.7 hours working on the demand letter. (Doc. 114-1 at 12). Approximately one week later, he recorded an additional 4.2 hours drafting the settlement conference memorandum. (*Id.*). Defendants argue that the letter and memorandum relied on the "exact same material" and that it was therefore unreasonable for Mr. Bybee to have spent this much time drafting the documents. That said, the Court is unable to compare the documents for itself because Defendants only attached the demand letter to their Response (Doc. 116-2 at 1–7) and failed to provide the Court with the memorandum. To the extent that the drafting of the documents required reliance on the same materials and therefore involved duplicative work, the Court notes that Plaintiff has already accounted for such duplicity by reducing the time entries for purposes of his fee request. As to the demand letter, Plaintiff requests fees for only 1.7 of the 2.7 hours recorded. (Doc. 114-1 at 12). As to the memorandum, Plaintiff requests fees for only 3.0 of the 4.2 hours recorded. (*Id.*). The Court finds Plaintiff's fee request for the time spent drafting the settlement documents to be reasonable and further reduction unnecessary.

Finally, Defendants take issue with the time Mr. Bybee spent on the jury instructions. Mr. Bybee recorded 20.5 hours drafting, revising, and conducting research related to the jury instructions.[11] (Doc. 114-1 at 15–16, 19). Plaintiff requests fees for 19.2 of those hours, which represents approximately 9.6% of the total time for which Plaintiff requests fees in this case.[12] (*Id.*). Defendants argue that such a time expenditure is

---

[11] The total of 20.5 hours is a sum of the following time entries, grouped together according to their respective dates: 0.8 hours (June 8, 2022); 9 hours (June 15–17, 2022); 7.1 hours (June 26–28, 2022); 0.8 hours (August 29, 2022); and 2.8 hours (September 14–15, 2022). (*See* Doc. 114-1 at 15–16, 19).

[12] Plaintiff reduced a time entry from June 16, 2022 from 2.1 to 2.0 hours, a time

"absolutely unreasonable" for a routine task such as drafting jury instructions. (Doc. 116 at 6). In the Reply, Plaintiff explains that the jury instructions took longer than usual because (i) Plaintiff had to "carr[y] the brunt of the work" in drafting the instructions and (ii) the drafting of the instructions required some amount of legal research. (Doc. 118 at 9). Having reviewed the parties' arguments and the entire record in this matter, the Court finds that a partial reduction in Plaintiff's requested fee in this area is appropriate.

As an initial matter, the Court recognizes that the preparation of the jury instructions likely required more intensive legal research than usual. This is because, unlike in many other types of civil cases, there are no Ninth Circuit Model Instructions specifically intended for Odometer Act cases. Thus, the parties were tasked with drafting original jury instructions, at least with respect to the relevant legal standards under the Odometer Act. Even considering the additional legal research required, however, the time billed by Plaintiff is unreasonable. Although it is true that some of the jury instructions were unique to this Odometer Act case, most of the preliminary and final instructions could be borrowed directly from the Ninth Circuit Model Instructions and therefore should have required very little time or labor at all. Yet, the parties had *significant* difficulties in preparing the jury instructions, as evidenced by the fact that the Court rejected their proposed instructions twice and the parties had to file proposed instructions three separate times.[13] The parties

_____

entry from a time entry from June 27, 2022 from 3.5 to 2.5 hours, and a time entry from August 29, 2022 from 0.8 to 0.6 hours. (*See* Doc. 114-1 at 15–16). Thus, for purposes of this Motion—and with respect to the time entries related to the jury instructions—Plaintiff reduced his fee request by 1.3 hours, or from 20.5 hours to 19.2 hours. As indicated above, 19.2 hours represents approximately 9.6% of the 199.1 hours for which Plaintiff requests fees in this Motion.

[13] The parties' initial proposed instructions (Doc. 78) were rejected by the Court at the June 21, 2022 FPTC. (*See* Doc. 82). The parties were ordered to file revised proposed instructions and they did so on June 28, 2022. (Doc. 84). At trial, the Court rejected the parties' revised proposed instructions because they were *identical* to the parties' initial proposed instructions. The Court issued its own preliminary instructions and ordered the parties to file revised proposed final instructions. (*See* Doc. 100). On September 15, 2022, the parties filed revised proposed final instructions. (Doc. 99). The Court discussed and

repeatedly filed deficient proposed instructions that failed to meet the Court's expectations, which were clearly set forth in the April 7, 2022 Order. (*See* Doc. 58 at 3–4). The parties' difficulties continued even into trial, as the Court ultimately provided its own preliminary instructions to the jury, based on the Ninth Circuit Model Instructions. The parties again revised and filed proposed final instructions during trial, (*see* Doc. 99), and the Court still had to spend a significant amount of time working with the parties to resolve their disputes and to finalize the instructions in a manner that met the Court's expectations and allowed them to be read to the jury.

To be sure, the parties' difficulties in preparing the jury instructions partially explains the 19.2 hours for which Plaintiff requests fees. The parties had to revise the instructions multiple times, which reasonably resulted in an increase in the time and labor required of counsel. Mr. Bybee also indicates he was forced to "carr[y] the brunt of the work" in drafting and revising the instructions because of the lack of assistance he received from Defendants' counsel. (Doc. 118 at 9). This runs contrary to the Court's April 7, 2022 Order, which stated that the proposed instructions were to be *jointly* prepared. (Doc. 58 at 3). For these reasons, Plaintiff is entitled to at least some award of fees for the work Mr. Bybee completed in drafting and revising the jury instructions and the Court will not reduce *all* the hours Plaintiff claims.

That said, the parties' failure to comply with the Court's directions and their repeated failures to draft appropriate jury instructions necessitates at least some reduction in the award of fees to Plaintiff. First, the Court will not award Plaintiff *any* fees for the time spent revising the jury instructions between June 26–28, 2022. This work occurred after the parties were ordered at the FPTC to revise the instructions in line with the Court's April 7, 2022 Order. (*See* Doc. 82). Despite recording 7.1 hours—of which Plaintiff requests fees for 6.1 hours—revising the instructions and researching instruction-related issues, (Doc. 114-1 at 16), the amended proposed jury instructions filed on June 28, 2022

---

finalized these instructions with the parties—and resolved several disputes in doing so— before issuing the final instructions to the jury. (Doc. 104, "Final Jury Instructions").

were *identical* to the proposed jury instructions that the Court rejected at the FPTC, at least based on a comparison of the documents filed with the Court. (*Compare* Doc. 78 *with* Doc. 84). Thus, it is entirely unclear how Mr. Bybee spent this time. The Court will reduce these 6.1 hours from the total reasonable-hours component of the fee award calculation. Second, the Court finds that a 15-percent reduction in the fee award is appropriate as it relates to the remaining 13.1 hours of work that Mr. Bybee claims for drafting, revising, and researching for the proposed jury instructions. Such a reduction accounts for the parties' failure to follow the Court's directions while fairly reflecting the work Mr. Bybee did on the proposed jury instructions. A 15-percent reduction results in an additional two hours reduced from the reasonable-hours component. Adding these reductions together, the Court will reduce the reasonable-hours component by 8.1 hours.

### ii.      *Novelty and Difficulty of the Questions Involved*

As noted above, Plaintiff argues that odometer fraud cases "are unique and require efforts by counsel to discover and uncover documentation and facts which support not only proof of the violation, but show that the violation was committed with the intent to defraud." (Doc. 114 at 6). Plaintiff further contends that many lawyers fail to properly research the statute and relevant case law, and risk focusing too much on proving a violation while failing to prove the necessary element of intent to defraud. (*Id.*).

In the Response, Defendants argue that Mr. Bybee "practices exclusively" in this area of litigation and therefore these cases "are not unique, novel, or difficult" for an "experienced and seasoned attorney" such as him. (Doc. 116 at 6). The Court is not persuaded. This *Kerr* factor simply asks the Court to consider the nature and difficulty of the questions involved in this case, not whether those questions are difficult to the specific attorneys involved in the action. The Court agrees with Plaintiff that the burden on the plaintiff to prove intent to defraud makes odometer fraud cases such as this "much more difficult to reach a successful conclusion." (Doc. 114 at 7).

### iii.      *Skill Requisite to Perform Legal Services Properly*

Plaintiff contends that many odometer fraud cases—including the present case—

involve small car dealerships with minimal documentation records, particularly in comparison to larger, more established franchise dealerships. (Doc. 114 at 7). As a result, Plaintiff contends that an attorney handling these types of cases "must know how and where to find the documentation need[ed] to support the violation and prove intent to defraud" and that therefore "a specific level of skill and commitment" is required of attorneys if they are to properly perform the legal services in these cases. (*Id.*). Defendants respond that Plaintiff "fails to explain what required so much skill in *this* particular case" and that Plaintiff is merely repeating the same arguments he has made in previous cases before this Court. (Doc. 116 at 6 (emphasis added)).

The Court accepts Plaintiff's contention that discovery may be more difficult in cases where the dealership does not keep detailed, extensive records. The Court also recognizes that argument is rather general and unsupported by facts specific to this case, and that it mirrors arguments Mr. Bybee has made in previous cases. Therefore, the Court finds this factor to weigh rather neutrally in the analysis.

### iv.    Preclusion of Other Employment Due to Case

Mr. Bybee asserts that, at times, the demands of this case caused him to decline taking on other new cases. (Doc. 114 at 7). Defendants respond by pointing out that Mr. Bybee claims to have spent 199.1 hours working on this case over the course of 723 days, noting that this averages to just .275 hours—or 16.5 minutes—per day that Mr. Bybee spent working on this case. (Doc. 116 at 7). Defendants therefore argue that Mr. Bybee's assertion—that he turned down *other* new cases because of the intensive nature of his work in *this* case—is "absurd," an "exaggeration," and should be "offensive" to the Court. (*Id.*).

Plaintiff responds that Mr. Bybee was not turning down cases throughout the entire 723-day course of litigation, but rather only during the time "immediately prior to and up through trial." (Doc. 118 at 9). Mr. Bybee asserts that, during that time, "nearly every new client inquiry that was time sensitive was turned away or referred due to the time demanded for this case." (*Id.*). The Court finds this to be a reasonable explanation. It goes without saying that the demands of any case increase as trial approaches. This was true for the

present case, as the time log submitted by Mr. Bybee indicates that 98.6 hours—or nearly *fifty percent*—of the 199.1 hours spent on this case occurred between August 22, 2022 and September 19, 2022. (Doc. 114-1 at 16–20). If that time period is expanded to include the time Mr. Bybee spent preparing for the Final Pretrial Conference—which included the drafting of certain trial documents such as the jury instructions, verdict form, and *voir dire* questions—then 126.5 hours, or nearly *sixty-four percent*, of the 199.1 hours spent on this case occurred between April 2022 and September 2022. (*Id.* at 14–16). Therefore, the Court does not find the assertion made by Mr. Bybee—that the demands of this case precluded other employment during the months leading up to and during trial—to be "absurd," a clear "exaggeration," or otherwise "offensive" to the Court. This factor weighs in favor of Plaintiff and supports his fee request.

### v. *Customary Fee*

Mr. Bybee requests a rate of $475 per hour. He contends that this rate is in line with the customary fee charged in these types of cases in Arizona. For support, he relies on the declarations of two Arizona attorneys: Richard Groves and Gregory Larson. (Docs. 114-2 & 114-3). Mr. Groves, who has been in private practice for fifty years and has a billing rate of $550 per hour, avers that he is familiar with the work involved in consumer protection cases such as this and that Mr. Bybee's requested rate is reasonable. (Doc. 114-3 at 2–3). Mr. Larson, who has been in private practice for eleven years and has a billing rate of $375 per hour, also avers that he is familiar with the work involved in consumer protection cases such as this and that Mr. Bybee's requested rate is reasonable. (Doc. 114-2 at 2–3).

Mr. Bybee has thirty-three years of experience. (Doc. 114-1 at 2). Strictly considering their years of experience, a $475-per-hour rate for Mr. Bybee is reasonable in comparison to Mr. Groves and Mr. Larson. If Mr. Larson—whose rate is $175 less than Mr. Groves after eleven years of experience—were to uniformly increase his rate each year by approximately $4.50, his rate after fifty years of experience would be exactly equal to Mr. Groves'. Likewise, upon reaching thirty-three years of experience—equal to that of Mr. Bybee—Mr. Larson's rate would have increased by approximately $100, making his

rate identical to Mr. Bybee's rate of $475 per hour. Thus, using the rates of Mr. Larson and Mr. Groves as guides, Mr. Bybee's requested rate is reasonable for his experience.

In addition to the declarations, Mr. Bybee points to four other instances in which his $475-per-hour rate has been found reasonable by courts in this District. (Doc. 114 at 8; Doc. 114-1 at 4). In *Avila*, *Frederick*, and *Rife*, United States District Court Judge Douglas L. Rayes found Mr. Bybee's "$475-per-hour rate to be reasonable given his experience." *See Avila v. Used Car Showcase 1 LLC*, No. CV-20-01756-PHX-DLR (D. Ariz. Jan. 31, 2022), ECF No. 40 at 1; *Frederick v. Garcia*, No. CV-20-0929-PHX-DLR (D. Ariz. Feb. 2, 2022), ECF No. 45 at 1; *Rife v. Randolf Ezrre Wholesale Auto Sales LLC*, No. CV-19-04689-PHX-DLR (D. Ariz. Apr. 25, 2022), ECF No. 103 at 1. Judge Rayes did not elaborate on this finding any further, likely because the defendants in those cases did not file responses to or otherwise oppose Mr. Bybee's fee requests. Likewise, in *Phillips*, United States District Judge Susan M. Brnovich found Mr. Bybee's rate of $475 per hour to be "reasonable, particularly because this case proceeded to a bench trial." *Phillips v. David Hay Enters. Inc.*, No. CV-19-05042-PHX-SMB, 2022 WL 2820801, at *1 (D. Ariz. Feb. 14, 2022). Like the other cases, the defendant in *Phillips* did not respond to or otherwise oppose the plaintiff's motion for fees and Judge Brnovich, like Judge Rayes, therefore did not explain her reasonableness finding any further.

Defendants rely on *Heward*, an odometer fraud case from this District in which Mr. Bybee's $475-per-hour rate was found unreasonable. *Heward v. Thahab*, No. CV-19-05155-PHX-DJH (D. Ariz. Oct. 4, 2021), ECF No. 57 at 5. In that case, United States District Judge Diane J. Humetewa rejected Mr. Bybee's $475-per-hour rate and found that a $425-per-hour rate was reasonable. *Id.* Judge Humetewa supported her finding by citing to six other cases from this District in which judges approved a $425-per-year rate for Mr. Bybee. *Id.* (citing *Baeza v. Compadres Auto Sales, LLC*, No. CV-16-01903-PHX-DMF (D. Ariz. Apr. 26, 2017), ECF No. 30; *Thompson v. Qal Dalmi Auto Sale LLC*, No. CV-18-00478-PHX-JJT (D. Ariz. Aug. 1, 2018), ECF No. 19; *Aguayo v. Transtyle, Inc.*, No. CV-18-01184-PHX-SRB (D. Ariz. Aug. 29, 2018), ECF No. 37; *King v. Union Leasing Inc.*,

No. CV-17-03281-PHX-DGC (D. Ariz. Oct. 17, 2018), ECF No. 91; *Braunlich v. Arizona Road Trip Auto LLC*, No. CV-19-05906-PHX-DWL (D. Ariz. Aug. 21, 2020), ECF No. 16; *Elasfia v. Lara*, No. CV-20-01666-PHX-CDB (D. Ariz. Mar. 31, 2021), ECF No. 33).

The Court declines to follow *Heward* and reduce Mr. Bybee's reasonable fee from $475 to $425 per hour. Mr. Bybee avers that he raised his hourly rate for consumer protection litigation from $425 to $475 per hour in June 2019. (Doc. 114-1 at 5). As discussed above, this rate increase was reasonable and in line with the rates of other similar attorneys considering Mr. Bybee's continually increasing experience. However, four of the six cases relied upon in *Heward* assessed the reasonableness of Mr. Bybee's fee prior to June 2019, when it was still just $425 per hour. Thus, those cases did not account for Mr. Bybee's increased experience or his 2019 rate increase. Here, the Court recognizes that Mr. Bybee's rate has reasonably increased since those decisions were made.

The Court also declines to follow the six cases cited in *Heward* because those cases were procedurally different from the present case in a manner which supported a lower rate and minimized the reasonableness analysis conducted by the courts. Although all six cases were—like here—odometer fraud cases, the plaintiffs in each of those cases were awarded fees in conjunction with a finding that they were entitled to default judgment. Therefore, the defendants in each of those cases failed to contest the claims against them. As a result, the cases required far less work from Mr. Bybee. Except for *King*—where Mr. Bybee asserted thirty-five reasonable hours of work—each case involved *ten or fewer* hours of work from Mr. Bybee. Additionally, the defendants' failures to contest the claims against them included a failure to oppose Mr. Bybee's fee request. As a result, the courts in each of those cases did not meaningfully analyze the reasonableness of Mr. Bybee's rate. Rather, the courts summarily granted his fee request without meaningfully explaining why Mr. Bybee's $425-per-hour rate was reasonable. Therefore, the cases relied upon by *Heward* offer minimal persuasive value in this Court's analysis of Mr. Bybee's rate in the present case. In contrast, Defendants in this case not only contested the claims against them, but litigated this action through a jury trial. The work required of Mr. Bybee in this case—

23

199.1 requested reasonable hours—was significantly higher than in any of those previous cases, which justifies a higher rate.

Aside from their reliance on *Heward*, Defendants also argue that Mr. Bybee's requested $475-per-hour rate is unreasonable because he lacks the experience and knowledge to demand such a rate. (Doc. 116 at 4). Defendants point to Mr. Bybee's admission that he has little experience with jury trials in federal court. (*Id.*). Defendants contend that Mr. Bybee's minimal experience showed too, pointing to Mr. Bybee's failure to purchase deposition transcripts, his inability to prepare jury instructions, and his overall poor performance during the jury trial including his struggles "with tasks as basic as making objections." (*Id.* at 4–5). Defendants argue that a $475-per-hour rate is "grossly high" given his level of experience and the incompetence he showed during trial. (*Id.* at 5). Defendants argue for a $250-per-hour rate. (*Id.* at 8).

The Court is unpersuaded. As for Mr. Bybee's struggles with the proposed jury instructions, the Court notes that the preparation of those instructions was to be a *joint* effort. (*See* Doc. 58 at 3). Therefore, Defendants' counsel is equally responsible for the issues that plagued the parties' proposed jury instructions, even if, as Plaintiff contends, Mr. Bybee carried the brunt of the work. As for Mr. Bybee's other trial-related struggles pointed out by Defendants, the Court recognizes that Mr. Bybee's trial performance may have been at times rough and unpolished. That said, the jury's Plaintiff verdict speaks for itself and demonstrates that Mr. Bybee's performance must not have been all that poor, at least in the eyes of the jurors. The Court will not entertain Defendants' request that it reduce Mr. Bybee's fee rate based solely on its own assessment of his trial performance.

In sum, the Court finds Mr. Bybee's hourly rate of $475 per hour to be reasonable, considering the nature of the work involved in this action and his extensive experience litigating these types of cases.

### vi.    *Whether Fee is Fixed or Contingent*

Plaintiff states that Mr. Bybee worked on a contingency basis. (Doc. 114 at 8–9).

///

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### vii.    *Time Limitations Imposed by the Client or Circumstances*

Plaintiff's Motion indicates that this factor is inapplicable because no time limitations were imposed by the client or circumstances in this case. (Doc. 114 at 9). The Court will not consider this factor any further.

### viii.    *Amount Involved and Results Obtained*

Plaintiff received a total damage award of $65,136.00 against Defendants Speed Auto and Lifted Trucks. (Doc. 112 at 1). Plaintiff asserts that "fee awards in civil rights and consumer protection matters regularly exceed the Plaintiff's recovery." (Doc. 114 at 9 (citing, *e.g.*, *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (awarding $245,450 in fees on a $33,350 recovery, including 143 hours for trial preparation); *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (awarding $500,000 in fees on a $60,000 settlement))).

### ix.    *Experience, Reputation, and Ability of Attorneys*

Mr. Bybee has been an attorney in private practice for 33 years. (Doc. 114-1 at 2). For the last 28 years, he has limited his practice to representing consumers in consumer protection cases. (*Id.*). He has extensive experience litigating odometer fraud cases such as this one. (*Id.* at 3). As discussed above with respect to the reasonableness of Mr. Bybee's $475-per-hour fee, the Court finds that his experience, reputation, and ability supports the fee requested in this case.

### x.    *Undesirability of the Case*

Plaintiff argues that "[c]onsumer protection cases, including Odometer Fraud Act claims, are brought in the public interest" and that they "may be particularly undesirable to lawyers for many reasons." (Doc. 114 at 10). Plaintiff contends that these cases are labor intensive and involve a heightened level of uncertainty as to their result. (*Id.* at 10–11). Plaintiff further contends that the small amount of money often involved makes it difficult for consumers to vindicate their rights under the statutes and that, even if they are successful, it is difficult for them to collect on their judgments. (*Id.* at 11). Finally, Plaintiff contends that the contingent nature of counsel's compensation—and the uncertainty related to actually collecting on an award of fees from the defendants—only further decreases the

attractiveness of these cases to many legal practitioners. The Court generally agrees with Plaintiff and finds that this factor weighs in favor of his fee request.

### xi.     *Nature and Length of Professional Relationship with Client*

According to Plaintiff's Motion, "[t]his is the first and only matter for which Plaintiff has hired counsel." (*Id.* at 11). There was no "volume discount" associated with Mr. Bybee's legal services and thus the nature or length of the relationship between Plaintiff and Mr. Bybee does not weigh against the fee award in this case.

### xii.     *Awards in Similar Cases*

The parties cite to many similar odometer fraud cases from this District. Although none of those cases resulted in a fee award as large as the fee requested by Plaintiff in this case, those cases involved far less attorney work. As discussed above with respect to the reasonableness of Mr. Bybee's hourly rate, many of the cases cited by the parties involved default judgments and defendants who did not contest the claims against them. Here, in contrast, much of the attorney hours logged by Mr. Bybee were a direct result of this litigation proceeding all the way to a jury trial. Thus, although the award in this case may be larger than many of the previous odometer fraud cases, this is because there was more work involved in this case. Moreover, and as found above, Mr. Bybee's hourly rate is reasonable as compared to similar cases.

## IV.     <u>CONCLUSION</u>

In conclusion, the Court finds that Defendants have failed to meet the standards for JMOL or for a new trial. The Court denies Defendants' Motion. Additionally, the Court finds that a reasonable rate for Mr. Bybee is $475.00 per hour. The Court further finds that the reasonable hours worked was 184.1 hours, after reducing 7.9 hours for all the time spent preparing the instant Motion and 8.1 hours from the time spent drafting, revising, and researching for the proposed jury instructions. The Court will therefore award Plaintiff $87,447.50 in attorney's fees.

///

///

26

Accordingly,

**IT IS ORDERED** that Defendants' Renewed Motion for Judgment as a Matter of Law/Request for New Trial (Doc. 117) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Award of Attorney's Fees (Doc. 114) is **granted as modified**. The Court approves an attorney's fees award in the amount of $87,447.50, for which Defendants Speed Auto Wholesalers, LLC, and Lifted Trucks, LLC, are jointly and severally liable.[14]

Dated this 12th day of June, 2023.

Honorable Steven P. Logan
United States District Judge

---

[14] This Order amends the Court's previous March 7, 2023 Order (Doc. 120). Specifically, the March 7, 2023 Order stated that "Defendants are jointly and severally liable." (Doc. 120 at 27). This Order now amends that line to state "Defendants Speed Auto Wholesalers, LLC, and Lifted Trucks, LLC, are jointly and severally liable."